**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (SBN: 328243)
pamela@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Sharon Allen

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SHARON ALLEN, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MIELLE ORGANICS, LLC,**<br><br>**Defendant.** | **Case No.:**<br><br>**CLASS ACTION SEEKING STATEWIDE RELIEF**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, *ET SEQ.*;**<br>2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br>3) **CALIFORNIA'S FALSE ADVERTISING LAW ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*;**<br>4) **BREACH OF EXPRESS WARRANTY;**<br>5) **UNJUST ENRICHMENT;**<br>6) **NEGLIGENT MISREPRESENTATION; AND,**<br>7) **INTENTIONAL MISREPRESENTATION.**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1.    Plaintiff SHARON ALLEN ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendant MIELLE ORGANICS, LLC ("Defendant" or "Mielle") concerning unlawful labeling and advertising of Defendant's consumer goods in violation of federal and California laws.

2.    The unlawfully represented products are sold direct to consumers on Mielle's website (https://mielleorganics.com/), as well as through third-party retailers such as Amazon.com ("Amazon"), Walgreens, ULTA, Nordstrom Rack, CVS and elsewhere.

3.    Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

4.    As stated by the California Supreme Court in *Kwikset v. Superior Court*, 51 Cal. 4th 310, 328-29 (2011):

> **Simply stated: labels matter.** The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities that may come to associate with a particular source. . .In particular . . . **the 'Made in U.S.A.' label matters**. A range of motivations may fuel this preference, from desire to support domestic jobs or labor conditions, to simply patriotism. The Legislature has recognized the materiality of this representation by specifically outlawing deceptive and fraudulent "Made in America" representations. (Cal. Bus & Prof. Code section 17533.7; see also Cal. Civ. Code § 1770, subd. (a)(4) (prohibiting deceptive representations. Of geographic origin)). The objective of section 17533.7 "is to protect consumers from being misled when they purchase products in the belief

that they are advancing the interest of the United States and the industries and workers. . . (emphasis added).

5.     Mielle represents (via its advertising and/or on the packaging of its products) that the products have: (1) certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp; (2) anti-inflammatory and anti-fungal benefits; (3) natural ingredients; and (4) are Made in the USA–when in fact, all of these representations are false and/or misleading.

6.     Contrary to Defendant's express representations and its failure to clearly and adequately qualify those representations, the products purchased by Plaintiff and Class members do not in fact contain: (1) ingredients capable of reliably, repeatedly and demonstrably "combatting dandruff" and/or "increasing blood circulation" [to the scalp] to cause "faster and thicker" hair growth; (2) ingredients capable of reliably, repeatedly and demonstrably providing anti-inflammatory or anti-fungal benefits; (3) natural ingredients; and (4) components and/or ingredients solely sourced from the United States.

7.     Plaintiff purchased Mielle's Rosemary Mint Scalp & Hair Strengthening Oil (the "Product"), which is specifically marketed, advertised, and/or labeled as: (1) increasing scalp circulation and oxygenation; (2) combatting dandruff; (3) promoting hair growth; (4) containing "natural, organic ingredients and essential oils," including rosemary, which Mielle purports to have "anti-inflammatory" and "anti-fungal" properties; and (5) "Made in the USA"–despite the fact that, unbeknownst to Plaintiff at the time of purchase, each of these representations is in fact false.

8.     Mielle's other haircare products [**Exhibit B** filed herewith] (together with the Product, the "Class Products")—also display the same unqualified "Made in the USA" representation (or a similar unqualified U.S. origin claim) and false "natural" claims.

9.     Defendant's conduct of advertising and selling deceptively labeled products violates: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; (3) California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, *et seq.*; and constitutes (4) breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation.

10.    Such conduct is also in violation of 16 C.F.R. § 323 (Federal Trade Commission 2021) (the "MUSA Rule").

11.    This conduct caused Plaintiff, and other similarly situated consumers, damages, and requires restitution and injunctive relief to remedy and prevent future harm.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because: (1) there is minimal diversity, including because Plaintiff is a citizen of the State of California, and Defendant is a Delaware corporation with its headquarters and principal place of business in Indiana; (2) the amount in controversy in this matter exceeds $5,000,000, exclusive of interest and costs; and (3) there are more than one hundred (100) people in the putative class.

13.    Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Orange, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; (iii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

14.    Plaintiff is, and at all times mentioned herein was, a natural person, an individual citizen and resident of the County of Orange, State of California, and within this judicial district.

15.     Upon information and belief, Defendant is a corporation that is organized and exists under the laws of the State of Delaware, with a principal place of business within the State of Indiana, located at 8707 Louisiana Street, Merrillville, Indiana 46410.

16.     Upon information and belief, Defendant is among the fastest growing and now one of the most well-known hair care product companies in the United States.

17.     Plaintiff alleges that at all times relevant herein Defendant conducted business within the State of California, in the County of Orange, and within this judicial district.

18.     Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant, respectively.

### FACTUAL ALLEGATIONS

19.     According to its website, "Monique Rodriguez founded MIELLE in 2014 after her healthy, hair care regimen for her tailbone-length hair became somewhat of a craze among her social media followers."[1]

20.     "Since then, MIELLE has expanded to 10 collections under Monique's direction, including products for skin and children."[2]

21.     At all times relevant, Defendant has made material misrepresentations regarding the Class Products.

22.     Specifically, Defendant falsely advertised, marketed, promoted and sold the Product as: (1) containing certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp and (2) having anti-inflammatory

---

[1] *See* https://mielleorganics.com/pages/about?gad_source=1&gclid=CjwKCAiAqrG9BhAVEiwAaPu5zuS_b6y3VEG0QlTs1DGGXlu8pXejhQGP3gKOr8YM4DVSvGmVJrul-BoC9dIQAvD_BwE&gclsrc=aw.ds (last visited Feb. 12, 2025).

[2] *Id.*

and anti-fungal benefits; and, Defendant also falsely advertised, marketed, labeled, promoted and sold the Class Products (including the Product) as being: (3) made from natural ingredients and (4) "Made in the USA."

23.    This action seeks, among other things equitable and injunctive relief; public injunctive relief; restitution of all amounts illegally retained by Defendant; and disgorgement of all ill-gotten profits from Defendant's wrongdoing alleged herein. Unless enjoined, Defendant's unfair and unlawful conduct will continue into the future, and Plaintiff and class members will continue to suffer harm.

**A. False Claims Regarding Dandruff, Hair Growth, Increased Circulation to the Scalp and Oxygenation of the Scalp**

24.    Defendant markets and advertises the Product purchased by Plaintiff as having the ability to "<u>combat dandruff</u>"[3] and help hair grow "<u>faster and thicker</u>"[4] by claiming that ingredients contained in the Product "<u>increase blood circulation</u>" and result in "<u>more oxygen to be carried to your scalp</u>."

25.    Consumers, like Plaintiff, relied on these representations and purchased the Product believing it will cure and prevent dandruff and support their hair growth and scalp health by increasing circulation and thus oxygen to the scalp.

26.    These representations are and/or were displayed conspicuously in the advertising of the Product on Defendant's website, Amazon, as well as other major online retailers like Target.

27.    Below are non-exhaustive examples of these representations on Amazon:

> • SOOTHE DRY SCALP: This rich blend of over 30 essential oils and nutrients deeply penetrates the scalp to increase circulation, combat dandruff, and comfort itchy, sensitive skin while working to strengthen, lengthen, nourish, and protect hair

---

[3]  *See* https://www.amazon.com/dp/B07N7PK9QK?ref_=posts (last visited Feb. 13, 2025) (noting the Product contains "over 30 essential oils and nutrients deeply penetrates the scalp to **increase circulation**, **combat dandruff**, and comfort itchy, sensitive skin while working to strengthen, **lengthen**. . .**hair")** (emphasis added).

[4]  *Id.* (as of at least September 2024, the advertising for the Product on Amazon included the representation that the Product helps hair grow "faster and thicker" with claims that ingredients contained in the Product "increase blood circulation" and result in "more oxygen to be carried to your scalp.").







**Faster and thicker hair**

Both rosemary and mint essential oils are known to increase blood circulation which allows for more oxygen to be carried to your scalp. More oxygen will stimulate your hair, resulting in faster and thicker hair.

**Longer and Heathier**

If increasing your hair length is one of your top hair concerns, then you have come to the right place. For the women wearing their hair in protective styles, just a couple drops of our Rosemary Mint Strengthening Oil at your roots is what you need to keep your strands long and luscious.

**Shinier Hair**

For a bouncy, natural style, use our Rosemary Mint Strengthening Shampoo and bring back shine to your curly hair! With a combination of our natural ingredients and commitment to a strict hair regime, your definition of healthy hair will be taken to a whole new level.

28.   Below are non-exhaustive examples of these representations on Defendant's website:[5]



---

[5]  Defendant made these representations on its website (https://mielleorganics.com/products/rosemary-mint-oil) until at least September of 2024.

29. These representations also *currently* appear on Target.com[6] as well as various other retail websites and are posted all over social media[7] as of the filing of this Complaint.

30. In addition to appearing on third-party retailer websites, Defendant's extensive social media presence—through both its own accounts and those of its contracted agents and influencers—has further disseminated these misrepresentations. Upon information and belief, these misrepresentations were widespread across numerous social media posts, many of which were sponsored or otherwise directed by Defendant.

31. Upon information and belief, most, if not all, of the information related to Defendant's social media activities, including the specific posts, engagements, and interactions with influencers, is exclusively within Defendant's possession and control.

32. Despite these representations, the Product does not contain *any* ingredients capable of reliably, repeatedly and demonstrably "combatting dandruff" and/or "increasing blood circulation" [to the scalp] to cause "faster and thicker" hair growth.

---

[6] https://www.target.com/p/mielle-organics-rosemary-mint-scalp-38-strengthening-hair-oil-2-fl-oz/-/A-75566105 (last visited Feb. 13, 2025) ("Both rosemary and mint essential oils are known to increase blood circulation which allows for more oxygen to be carried to your scalp. More oxygen will stimulate your hair follicles, resulting in nourished and thicker hair . . If increasing your hair length is one of your top hair concerns, then you have come to the right place").

[7] https://www.heb.com/product-detail/mielle-rosemary-mint-scalp-hair-oil/3658502 (last visited Feb. 13, 2025) (same language as Target in footnote above); https://tdawi.com/en-us/mielle-organics-rosemary-mint-scalp-hair-strengthening-oil-with-biotin-essential-oils-nourishing-treatment-for-split-ends-dry-scalp-hair-growth-safe-for-all-hair-types-2-fluid-ounces?srsltid=AfmBOor3HqETiDb45-r6Q1Zg4k-cp-LZsJzhibqZ2XC4vk61KJg75vM1 (last visited Feb. 13, 2025) (same); https://bevmo.com/products/227188 (last visited Feb. 13, 2025) (same); https://avenzur.com/product/mielle-organics-rosemary-mint-growth-oil-sulfate-and-paraben-free-2-ounces-AM-002?srsltid=AfmBOoq0h9IfQYQVyiRfxYOf2VYgU4wcD3pzRpec8bkTnqesljxk7_Aw (last visited Feb. 13, 2025) (same); *see e.g.,* https://www.facebook.com/story.php/?story_fbid=245063621412537&id=100077267017664&_rdr (last visited Feb. 13, 2025) (same); https://www.instagram.com/temmydaynaturals/p/C6g691MIISK/ (last visited Feb. 13, 2025);

33.　In other words, no scientific agreement exists that any of the individual ingredients of the Product have such benefits.

34.　Even if any of the individual ingredients of the Product had the requisite scientific agreement necessary to support the claims Defendant makes regarding circulation and oxygenation of the scalp, Defendant would need to scientifically demonstrate that such ingredient, in the amount contained in the Product still delivers such benefit.

35.　In addition, Defendant would need to scientifically demonstrate that the dozens of other ingredients in the Product do not adversely interfere with such ingredient's alleged anti-dandruff, circulation and oxygenation benefits.

36.　Upon information and belief, and after a thorough search of published research as of the date of the filing of this Complaint, it appears Defendant cannot scientifically substantiate such claims as there are no available studies or publications on the Product's formulation.

37.　To make matters worse, Defendant does not provide instructions to consumers as to how much of the Product and how many times the Product needs to be applied to achieve dandruff, scalp circulation and scalp oxygenation (and thus hair growth) benefits. Without such instructions, Defendant is representing that such benefits are achieved upon the very first application of the Product, which is simply not the true.

38.　Even if Defendant had the requisite scientific evidence and proper instructions, it would need to apply for U.S. Food and Drug Administration ("FDA") approval to sell such a product or, at the very least, include ingredients that fall under an existing drug monograph. Mielle has done neither.

39.　As such, the Product is an unapproved new drug under section 201(g)(1)(B) of the Federal Food, Drug and Cosmetic Act (the "Act")[8] because it is intended for use in the cure, mitigation, treatment, or prevention of disease or intended to affect

---

[8] 21 U.S.C. § 321(g)(1)(B).

the structure or any function of the body of man or other animals.[9]

40.    New drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from FDA, as described in sections 301(d) and 505(a) of the Act.[10]

41.    Furthermore, the Product is misbranded. A drug is misbranded under section 502(f)(1) of the Act[11] if the drug fails to bear adequate directions for its intended use(s). "Adequate directions for use" mean directions under which a layperson can use a drug safely and for the purposes for which it is intended (21 CFR 201.5).

42.    Such representations that the Product had the above-mentioned scalp and hair properties were material to Plaintiff in making her decision to purchase the Product.

43.    As a result of the false claims associated with the Product, consumers have been misled for years, resulting in initial and repeat purchase of products they thought contained these scalp and hair benefits.

44.    As a consequence of Defendant's unfair and deceptive practices, Plaintiff and other similarly situated consumers purchased Defendant's Product under the false impression and in reliance upon Defendant's express representations that the Product has the ability to "combat dandruff" and help hair grow "faster and thicker" because the ingredients contained in the Product "increase blood circulation" and result in "more oxygen to be carried to your scalp."

45.    As a result, Plaintiff and other similarly situated consumers overpaid for the Defendant's Product, purchased the Product over the products of competitors, and/or purchased the Product under the false belief that the product they purchased had these hair and scalp benefits, when in fact, it did not.

---

[9] Notably, the Product's "circulation" and "oxygenation" claims are exactly the same as the presumed pharmacology of the most well-known anti-hair loss/hair growth drug on the market, minoxidil. *See* https://en.wikipedia.org/wiki/Minoxidil ("Minoxidil is an adenosine 5'-triphosphate-sensitive potassium channel opener,[25] causing hyperpolarization of cell membranes. Theoretically, by widening blood vessels and opening potassium channels, *it allows more oxygen, blood, and nutrients to the follicles*.") (emphasis added).
[10] 21 U.S.C. §§ 331(d), 355(a).
[11] 21 U.S.C. § 352(f)(1).

---

46.    Had Plaintiff and other consumers similarly situated been made aware that Defendant's Product did not contain the advertised hair and scalp benefits, they would not have purchased the Product.

**B. False Claims Regarding Anti-Inflammatory and Anti-Fungal Properties**

47.    Defendant also markets and advertises the Product purchased by Plaintiff as a product that contains rosemary oil, which Defendant alleges provides "anti-inflammatory" and "anti-fungal" properties.

48.    These representations were displayed conspicuously in the advertising of the Product on Mielle's website,[12] and, upon information and belief, on third-party websites as well as social media.

49.    Consumers, like our Plaintiff, relied on these representations and purchased the Product believing it has benefits it does not have.

50.    Below is an example of these representations:



51.    Despite these representations, the Product does not contain any ingredients capable of reliably, repeatedly and demonstrably providing anti-inflammatory or anti-fungal benefits.

52.    In other words, no scientific agreement exists that any of the individual ingredients of the Product have such benefits.

53.    Even if Mielle had the requisite scientific evidence and proper instructions in relation to these claims, it would need to apply FDA approval to sell such a product

---

[12] https://web.archive.org/web/20240229115854/https://mielleorganics.com/products/rosemary-mint-oil

or, at the very least, include ingredients that fall under an existing drug monograph. Mielle has done neither and as such, the Product is an unapproved new drug under the Act [13] because it is intended for use in the cure, mitigation, treatment, or prevention of disease or intended to affect the structure or any function of the body of man or other animals.

54.     New drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from FDA, as described in sections 301(d) and 505(a) of the Act.[14]

55.     Such representations that the Product had "anti-inflammatory" and "anti-fungal" properties were material to Plaintiff in making her decision to purchase the Product.

56.     As a result of the false "anti-inflammatory" and "anti-fungal" claims associated with the Product, consumers have been misled for years, resulting in initial and repeat purchase of products they thought contained these properties.

57.     As a consequence of Defendant's unfair and deceptive practices, Plaintiff and other similarly situated consumers purchased the Product under the false impression and in reliance upon Defendant's express representations that the Product had "anti-inflammatory" and "anti-fungal" properties.

58.     As a result, Plaintiff and other similarly situated consumers overpaid for the Product, purchased the Product over the products of competitors, and/or purchased the Product under the false belief that the product they purchased had "anti-inflammatory" and "anti-fungal" properties, when in fact, it did not.

59.     Had Plaintiff and other consumers similarly situated been made aware that the Product did not have "anti-inflammatory" and "anti-fungal" properties, they would not have purchased the Product.

//

[13] 21 U.S.C. § 321(g)(1)(B).
[14] 21 U.S.C. §§ 331(d), 355(a).

### C. False Natural Claims

60.    Mielle also markets and advertises all Class Products, including the Product purchased by Plaintiff, as natural hair care products.[15]

61.    Mielle's "natural" representations are/were displayed on Mielle's website, on its Amazon store page and in the descriptions of Mielle's products on other third-party retailer websites.

62.    Upon information and belief, Mielle's representations regarding the natural qualities of the Class Products, including the Product purchased by Plaintiff, were also prominently disseminated across Mielle's social media platforms, as well as through posts and promotions by its agents and influencers.

63.    Upon information and belief, most, if not all, of the information regarding the specific social media posts, promotional content, and interactions with influencers related to Mielle's "natural" representations is within Mielle's exclusive possession and control.

64.    The title tag for Mielle's website's main page (www.mielleorganics.com) is "Organic Hair Care Products, Natural Hair Products" despite the fact that most, if not all, of Mielle's products contain numerous synthetic, non-natural and non-organic ingredients.

65.    Below are non-exhaustive examples of these representations:



---

[15] *See* https://mielleorganics.com/pages/about-us (Mielle stands for **natural,** results-driven hair care that you can trust") (last visited Feb. 10, 2025) (emphasis added); https://a.co/d/025fcmVX (last visited Feb. 10, 2025).

**DESCRIPTION**

Our Rosemary Mint scalp and hair oil is a nutrient-rich, intensive formula meant to help you address your hair concerns. From nourishing hair follicles, smoothing split ends and help with dry scalp, this hair oil uses natural, organic ingredients and essential oils to provide the care your hair deserves. Use it on protective styles, including braids and weaves, and enjoy its fresh, invigorating scent during your next hot oil treatment.

66.    These "natural" representations induce consumers, like Plaintiff, to purchase the Class Products, believing Mielle's products are "natural" when in fact that is not the case.

67.    Mielle's "natural" representations on its website, including in the title tag of its homepage, provide Mielle with a significant, yet unfair, competitive advantage in search engine results, as algorithms prioritized Mielle's page when consumers search for these terms in connection with hair care products.

68.    Despite its "natural" representations, most, if not all, of Mielle's products are made with chemicals and/or synthetically created ingredients that are in no way natural.

69.    For example, the Product purchased by Plaintiff contains benzyl nicotinate and ascorbic acid, both of which are synthetically produced yet Mielle's webpage for the Product stated at the time of Plaintiff's purchase (and through at least September 2024) that "…this hair oil uses natural, organic ingredients and essential oils to provide the care your hair deserves," in addition to the companywide "natural" claims made by Mielle.[16]

70.    Additionally, the title tag for Mielle's Rosemary Mint collection products (at the time of Plaintiff's purchase and through at least September 2024) is "Organic Rosemary Mint Hair Products│Natural Hair Products – MIELLE" despite the fact that all the products within the Rosemary Mint collection contain numerous synthetic, non-natural and non-organic ingredients.

71.    Mielle's White Peony Leave In Conditioner contains stearalkonium chloride, phenoxyethanol, polysorbate 60 and centrimonium chloride none of which are

---

[16] *See* https://web.archive.org/web/20240229115854/https://mielleorganics.com/products/rosemary-mint-oil ("[T]his hair oil uses natural, organic ingredients and essential oils to provide the care your hair deserves.").

"natural." These, among other ingredients in White Peony Leave In Conditioner, are all synthetically created chemicals yet Mielle markets this product as "…lightweight and packed with natural and organic ingredients to give your hair the moisture and protection it needs" on Mielle's product webpage.[17]

72.    Similarly, Mielle's Babassu Oil & Mint Deep Conditioner contains behentrimonium methosulfate, cetylesters, isoamyl laurate, dehydroacetic acid, which, among other ingredients in the product, are synthetic and not natural. Despite the presence of numerous synthetic ingredients in this product, Mielle's webpage for the product claims "…is enriched with fatty acids and natural oils, as well as complex amino acids from wheat, soy, *and other all-natural ingredients*…"[18]

73.    Such representations that the Product was made with natural ingredients were material to Plaintiff in making her decision to purchase the Product.

74.    As a result of the false "natural" claims associated with the Class Products, consumers have been misled for years, resulting in initial and repeat purchase of products they thought were indeed natural and that did not contain synthetically and chemically derived ingredients.

75.    As a consequence of Defendant's unfair and deceptive practices, Plaintiff and other similarly situated consumers purchased Defendant's Class Products under the false impression and in reliance upon Defendant's express representations that the Class Products were made with natural ingredients, and not synthetically or chemically derived ingredients.

76.    As a result, Plaintiff and other similarly situated consumers overpaid for the Class Products, purchased the Class Products over the products of competitors, and/or purchased the Class Products under the false belief that the products they purchased were made with natural ingredients, when in fact, they were not, and

---

[17] https://web.archive.org/web/20240421141710/https://mielleorganics.com/products/organic-white-peony-ultra-moisturizing-leave-in-conditioner
[18] https://www.facebook.com/photo.php?fbid=4681755871941946&id=552830141501227&set=a.552838314833743&locale=br_FR

instead contained synthetic and chemically derived ingredients.

77.    Had Plaintiff and other consumers similarly situated been made aware that Defendant's Class Products were not made with only natural ingredients and instead contained synthetic and chemically derived ingredients, they would not have purchased the Class Products.

### D. False U.S. Origin Claims

78.    Mielle markets and advertises the Class Products, including the Product purchased by Plaintiff, as "Made in the USA."

79.    These representations (or substantially similar representations) are displayed conspicuously on the packaging of each of Defendant's Class Products.

80.    Although Defendant represents that the Class Products are "Made in the USA." (or some derivative thereof), Defendant's Class Products are wholly and/or substantially produced with components / ingredients that are manufactured, grown and/or sourced from outside of the United States.

81.    For example, the Product purchased by Plaintiff contains tea tree oil[19] and coconut oil[20], which, among other ingredients and components in the Product, are not from the United States, yet its packaging states "Made in the USA."

82.    Additionally, Mielle's Pomegranate & Honey Leave-In Conditioner product contains *Astrocaryum murumuru*[21] seed butter as well as *Camellia sinensis* (tea)[22] leaf extract, which, among other ingredients and components used to produce the product, are not from the United States, yet its packaging also states, "Made in the

---

[19] *See* https://en.wikipedia.org/wiki/Melaleuca_alternifolia ("Endemic to Australia, it occurs in southeast Queensland and the north coast and adjacent ranges of New South Wales where it grows along streams and on swampy flats, and is often the dominant species where it occurs.").
[20] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Coconut oil. According to the Food and Agriculture Organization of the United Nations, coconut oil is not produced in commercial quantities in the United States).
[21] *See* https://www.palmpedia.net/wiki/Astrocaryum_murumuru ("*Astrocaryum murumuru* is found in Brazil North, French Guiana, Guyana, Suriname, and Venezuela.")
[22] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Tea leaves. According to the Food and Agriculture Organization of the United Nations, tea is not produced in commercial quantities in the United States).

---

USA."

83.    Similarly, Mielle's Avocado Moisturizing Hair Milk product contains shea butter[23] as well as jojoba seed oil[24], which, among other ingredients and components used to produce the product, are not from the United States, yet its packaging also states, "Made in the USA."

84.    Mielle's White Peony Sulfate-Free Leave-In Conditioner product contains coconut oil, jojoba seed oil as well as *Camellia sinensis* (tea) leaf extract, which, among other ingredients and components used to produce the product, are not from the United States, yet its packaging also states, "Made in the USA."

85.    Below are non-exhaustive examples of these representations:

  

---

[23] *See* https://en.wikipedia.org/wiki/Vitellaria (The distribution map shows that the shea tree grows exclusively in Africa.)

[24] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Jojoba seeds. According to the Food and Agriculture Organization of the United Nations, jojoba seeds are not produced in commercial quantities in the United States.)

86.    As a result of the "Made in the USA" representations on the Class Products' packaging and marketing, online retailers have also furthered this misrepresentation through their websites' product descriptions, in addition to continuing to sell the Class Products with unqualified "Made in the USA" misrepresentations on their shelves, where applicable.

87.    Each consumer, including Plaintiff, was exposed to virtually the same material misrepresentation, as the similar labels were prominently placed on all Class Products that were sold, and are currently sold to consumers throughout the United States, including within California.

88.    Federal rules regarding the use of "Made in the United States" claims with respect to products and services are well established and well defined.

89.    Specifically, the Made in USA Labeling rule clearly defines the meaning of "Made in the United States", including synonymous phrases,[25] as well as when it can be used without clear and adequate qualification notifying consumers that the good or service in question contains or is made with ingredients or components that are not made or sourced in the United States.[26]

90.    Accordingly, Defendant is not entitled to lawfully make representations that the Class Products were "Made in the USA."

91.    By failing to disclose the use of foreign ingredients and components, the Defendant has unfairly and deceptively misrepresented the Class Products as being

---

[25] *See* 16 C.F.R. § 323.1(a) ("The term *Made in the United States* means any **unqualified representation,** express or implied, **that a product** or service, or a specified component thereof, **is of U.S. origin**, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "crafted" in the United States or in America, or any other unqualified U.S.-origin claim.") (emphasis added).

[26] *See* 16 C.F.R. § 323.2 Prohibited Acts ("In connection with promoting or offering for sale any good or service, in or affecting commerce as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44, **it is an unfair or deceptive act or practice** within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), **to label any product as Made in the United States unless** the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and **all or virtually all ingredients or components of the product are made and sourced in the United States**. (emphasis added).

---

of purely U.S. origin.

92.    As a consequence of Defendant's unfair and deceptive practices, Plaintiff and other similarly situated consumers purchased Defendant's Class Products under the false impression and in reliance upon Defendant's express representations that the Class Products were actually made in the United States with ingredients and components sourced from within the United States.

93.    As a result, Plaintiff and other similarly situated consumers overpaid for the Class Products, purchased the Class Products over the products of competitors, and/or purchased the Class Products under the belief that the products they purchased were made in the United States and did not contain ingredients from outside the United States.

94.    Despite the clearly established and well-defined federal rules regarding "Made in the United States" claims, Defendant falsely, unfairly and deceptively advertised, marketed and sold the Class Products, including the Product purchased by Plaintiff, as "Made in the USA." without clear and adequate qualification informing consumers of the presence of foreign ingredients and/or components as further discussed herein.

95.    Most consumers have limited awareness that products—along with their ingredients and components—labeled as made in the United States may, in fact, contain ingredients or components sourced, grown, or manufactured in foreign countries. This is a material factor in many purchasing decisions, as consumers believe they are buying superior goods while supporting American companies and jobs.

96.    Consumers generally believe that "Made in the USA" products are of higher quality than their counterparts that are made with foreign components.

97.    Plaintiff's reliance on Defendant's unqualified U.S. origin representations was reasonable, as consumers are accustomed to seeing disclosures such as "Made in the USA with globally sourced ingredients" or similar variations on product

packaging—if and when such claims are made. When consumers encounter an unqualified "Made in the USA" claim, they reasonably assume that the product contains no foreign-sourced ingredients or components.

98.    Such representations that the Product was made in the USA were material to Plaintiff in making her decision to purchase the Product.

99.    As a result of the unqualified "Made in the USA" representation on Defendant's product packaging of the Class Products, consumers have been misled for years, resulting in initial and repeat purchase of products they thought were indeed made in the United States with ingredients and components from the United States.

100.    Had Plaintiff and other consumers similarly situated been made aware that Defendant's Class Products contained a substantial amount of ingredients and components sourced from outside of the United States, they would not have purchased the Class Products.

101.    As a result of Defendant's false or misleading statements and/or failure to disclose the true nature of its Class Products, as well as Defendant's other conduct described herein, Plaintiff and other similar situated consumers purchased at least tens of thousands of units of Defendant's Class Products within California and have suffered, and continue to suffer, harm, including the loss of money and/or property.

102.    Defendant possesses superior knowledge of the true facts that were not disclosed, thereby tolling the running of any applicable statute of limitations.

### FACTS SPECIFIC TO PLAINTIFF SHARON ALLEN

103.    On January 12, 2024, Plaintiff searched online while at her home in Lake Forest, California looking to purchase hair care products specifically for scalp and hair health, strength and growth, and containing natural ingredients sourced from the United Sates.

104.    While researching the various options available online, Plaintiff read information and marketing materials online about the Product (i.e., Mielle's

Rosemary Mint Scalp & Hair Strengthening Oil), which revealed that Product was clearly marketed and advertised as: (1) promoting hair growth; (2) containing natural, organic ingredients and essential oils; (3) having "anti-inflammatory" and "anti-fungal" properties; and (4) being made in the United States without clear and adequate disclosure of foreign ingredients and components.

105.    After reviewing the Product's advertising and marketing online, Plaintiff saw the Product available for purchase on Amazon.

106.    On the Product's Amazon page Plaintiff read the following representations in the Product's marketing (emphasis added):

> SOOTHE DRY SCALP: This rich blend of over 30 essential oils and nutrients deeply penetrates the scalp _to increase circulation_, _combat dandruff_, and comfort itchy, sensitive skin while working to strengthen, lengthen, nourish, and protect hair
>
> _Faster and thicker hair_
> Both rosemary and mint essential oils are known to _increase blood circulation_ which allows for _more oxygen to be carried to your scalp_. _More oxygen will stimulate your hair, resulting in faster and thicker hair_.

107.    In addition to the above representations, Plaintiff viewed the pictures of the Product on Amazon and saw the representation that the Product was "MADE IN THE USA," which is clearly visible in the pictures on the Product's Amazon page.

108.    Relying on these representations, as any reasonable consumer would, Plaintiff purchased the Product for her personal use for approximately $8.99, excluding tax, through Amazon on January 12, 2024.

109.    Plaintiff reasonably relied on Defendant's above-mentioned representations regarding the Product.

110.    Defendant's representations concerning the Product were unlawful, untrue and/or deceptive and misleading as discussed in detail above.

111.    In making the decision to purchase Defendant's Product, Plaintiff relied upon

the advertising and/or other promotional materials prepared and approved by Defendant and their agents and disseminated through its Product's online advertisements, marketing (including social media), and packaging containing the misrepresentations alleged herein.

112. Had Plaintiff been made aware that the Product was not as represented (i.e., that it did not: (1) contain certain hair and scalp benefits, including dandruff relief, hair growth, and increased oxygenation and circulation to the scalp; (2) have anti-inflammatory and anti-fungal benefits; (3) contain natural ingredients; and was not (4) "Made in the USA" using only domestic ingredients and components, she would not have purchased the Product.

113. In other words, Plaintiff would not have purchased Defendant's Product, but for these misrepresentations.

114. As a result, Plaintiff was harmed because Plaintiff's money was taken by Defendant as a result of Defendant's false statements regarding the benefits, ingredients, and origin of the Product.

115. In each case when Plaintiff and putative Class members purchased a Class Product, they relied upon Defendant's representations in their purchasing decision, which is typical of most U.S. consumers.

116. Consequently, Plaintiff and other similar situated consumers were deceived as a result of Defendant's actions.

117. For instance, Plaintiff believed at the time she purchased the Product that it was of superior quality, and that she was supporting U.S. jobs and the U.S. economy, supporting ethical working conditions, and also buying U.S. quality ingredients as opposed to ingredients sourced, grown or made outside of the United States.

118. Ingredients and components grown or manufactured in the USA are subject to strict regulatory requirements, including but not limited to agricultural, environmental, labor, safety, ethical and quality standards.

119.   Foreign sourced, grown, or manufactured ingredients and components are not subject to the same U.S. standards and may pose greater risks to consumers, the environment, and the U.S. economy. This concern is especially significant for products intended for topical application to humans.

120.   Additionally, foreign sourced, grown or manufactured ingredients and components are also generally of lower quality than their U.S. origin counterparts, and routinely less reliable and of less quality than their U.S. origin counterparts.

121.   Moreover, the reason Plaintiff purchased the Product was for its natural ingredients, its hair and scalp benefits, and its anti-inflammatory and anti-fungal properties.

122.   The false, misleading or deceptive representation regarding the Class Products reduces overall customer satisfaction compared to if they were true.

123.   On information and belief, the Class Products lack the advertised-benefits, ingredients, and/or origin that was advertised, and therefore, are not worth the purchase price paid by Plaintiff and putative Class members.

124.   The precise amount of damages will be proven at the time of trial.

125.   Plaintiff and Class members were harmed as a result of Defendant's false, unlawful, unfair, deceptive, and/or misleading representations alleged herein.

126.   This false, unlawful, unfair, deceptive, and/or misleading advertising of the Class Products (including the Product) by Defendant presents a continuing threat to consumers, as Defendant's conduct is ongoing to this day.

### CLASS ALLEGATIONS

127.   Plaintiff brings this action on behalf of Plaintiff and all others similarly situated.

128.   Plaintiff is a member of and seeks to represent a Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and 23(b)(3), defined as:

> All persons within California who purchased one or more of Defendant's Class Products that: (1) included "Made in

the USA"(or similar language) on the Class Product or packaging of the Class Product and that were made with or contained ingredients or components that were not grown or manufactured in the USA; and/or (2) were advertised and/or marketed as containing "natural" ingredients but in fact contained chemicals and/or synthetically created ingredients, within the four-years prior to the filing of this Complaint.

129.   Plaintiff is a member of and seeks to represent a Sub-Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and 23(b)(3), defined as:

All persons within California who purchased one or more of Defendant's Rosemary Mint Scalp & Hair Strengthening Oil that was advertised as: (1) helping hair grow "faster and thicker," "increasing blood circulation and oxygenation" and/or "combatting dandruff" (or similar language); and/or (2) containing "anti-inflammatory" and/or "anti-fungal" properties, within the four-years prior to the filing of this Complaint.

130.   The Class and the Sub-Class shall be referred to herein jointly as the "Class."

131.   Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Further excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

132.   Plaintiff reserves the right to modify the proposed Class definitions, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

133.   <u>Numerosity</u>: The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals within California.

134.  <u>Commonality</u>: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

- The nature, scope, and operations of the wrongful practices of Defendant;

- Whether Defendant's Class Products are or have been represented as "Made in the USA" designation (or some derivative thereof);

- Whether Defendant's Class Products are or have been represented as containing natural ingredients;

- Whether Defendant's Product is or has been represented as helping hair grow "faster and thicker," "increasing blood circulation" and/or "combatting dandruff" (or similar language);

- Whether Defendant's Product is or has been represented as containing "anti-inflammatory" and/or "anti-fungal" properties;

- Whether Defendant negligently or intentionally misrepresented and/or omitted the fact that the Product purchased by Plaintiff and members of the Class are illegally sold within California;

- Whether Defendant knew or should have known that its business practices were unfair and/or unlawful;

- Whether the conduct of Defendant violated the CLRA;

- Whether the conduct of Defendant violated the FAL;

- Whether the conduct of Defendant was "unlawful" as that term is defined in the UCL;

- Whether the conduct of Defendant was "unfair" as that term is defined in the UCL;

- Whether Defendant was unjustly enriched by its unlawful and unfair business practices;

- Whether Plaintiff and members of the Class suffered monetary damages as a result of Defendant's conduct and, if so, the appropriate amount of damages; and

- Whether Plaintiff and members of the Class are entitled to injunctive relief, including public injunctive relief.

135.  <u>Typicality</u>: Plaintiff's claims are typical of those of the Class. Plaintiff and all members of the Class have been injured by the same wrongful practices of Defendant. Plaintiff's claims arise from the same course of conduct that gave rise to the claims of the Class and are based on the same legal theories in that Plaintiff purchased one or more Products from Defendant that was represented and/or advertised as: (1) containing certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp; (2) having anti-inflammatory and anti-fungal benefits; (3) being made from natural ingredients and (4) "Made in the USA."

136.  <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of members of the Class. Plaintiff's Counsel are competent and experienced in litigating consumer class actions. Plaintiff has retained counsel experienced in consumer protection law, including complex class action litigation involving unfair business practices. Plaintiff has no adverse or antagonistic interests to those of the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

137.  <u>Predominance</u>: Defendant has engaged in a common course of conduct toward Plaintiff and members of the Class, in that Plaintiff and members of the Class were induced to purchase the Class Products. The common issues arising from Defendant's conduct affecting members of the Class set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

138. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most members of the Class would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

139. Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendant will also likely continue to advertise, market, promote and package the Class Products (including the Product) in an unlawful and misleading manner, and members of the Class will continue to be misled, harmed, and denied their rights under California law.

140. Defendant has acted on grounds that apply generally to the Class, so that Class certification is appropriate.

**CAUSES OF ACTION**

**<u>FIRST CAUSE OF ACTION</u>**
**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq*.)**

141. Plaintiff re-alleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

142. California Civil Code Section 1750, *et seq.,* entitled the Consumers Legal Remedies Act ("CLRA"), provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer."

143.    The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia,* that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protections.

144.    Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in the sale of foods to consumers.

145.    Plaintiff and the Class Members are not sophisticated experts with independent knowledge of ingredient sourcing, product labeling and marketing practices.

146.    Plaintiff and the Class Members are California consumers who purchased Class Products for personal, family or household purposes.

147.    Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

148.    The Class Products that Plaintiff and other Class Members purchased from Defendants constitute "goods" as defined pursuant to Civil Code Section 1761(a).

149.    Plaintiff, and the Class members, are each a "consumer" as defined pursuant to Civil Code Section 1761(d).

150.    Each of Plaintiff's and the Class members' purchases of Defendant's products constituted a "transaction" as defined pursuant to Civil Code Section 1761(e).

151.    Civil Code Section 1770(a)(2), (4), (5), (7) and (9) of the CLRA provides that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
> (2) [m]isrepresenting the source, sponsorship, approval, or certification of goods or services;

(4) [u]sing deceptive representations or designations of geographic origin in connection with goods or services;

(5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

(7) [r]epresenting that goods or services are of a particular standard, quality, or grade…; [and]

(9) [a]dvertising goods or services with intent not to sell them as advertised.

152.   Defendant failed to comply with Civil Code Section 1770(a)(2), (4), (5), (7) and (9) by falsely advertising, marketing, promoting and selling the Product as: (1) containing certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation and oxygenation to the scalp and (2) having anti-inflammatory and anti-fungal benefits; and also falsely advertising, marketing, promoting, labeling and selling the Class Products (including the Product) as being (3) made from natural ingredients and (4) "Made in the USA."

153.   Plaintiff further alleges that Defendant committed these acts knowing the harm that would result to Plaintiff and Defendant engaged in such unfair and deceptive conduct notwithstanding such knowledge.

154.   Defendant knew or should have known that its representations about the Class Products as described herein violated federal rules and state laws, including consumer protection laws, and that these statements would be relied upon by Plaintiff and Class members.

155.   As a direct and proximate result of Defendant's violations of Cal. Civ. Code §§ 1750, *et seq*., Plaintiff and each Class member have suffered harm by paying money to Defendant for the Class Products, which they would not have purchased had they known the products were illegally, unfairly, and deceptively labeled and contained foreign ingredients.

156.    Plaintiff and the Class suffered monetary harm caused by Defendant because (a) they would not have purchased the Class Products on the same terms absent Defendant's illegal, unfair and deceptive conduct as set forth herein; (b) they paid a price premium for the Class Products or chose them over competing products due to Defendant's misrepresentations and deceptive packaging and marketing, and (c) the Class Products lack the benefits they purported to have and contain foreign ingredients and components which were not clearly and adequate disclosed.

157.    Plaintiff was therefore harmed because Plaintiff's money was taken by Defendant as a result of Defendant's false representations set forth on online, in marketing materials, and on the labels of the Class Products.

158.    Plaintiff and Class members reasonably relied upon Defendant's representations regarding the Class Products, and Plaintiff and the Class reasonably expected that the Class Products would not be illegally marketed, advertised, and/or labeled in an unfair, deceptive and misleading manner.

159.    Thus, Plaintiff and the Class reasonably relied to their detriment on Defendant's misleading representations.

160.    Pursuant to California Civil Code § 1782(a), on or about September 5, 2024, Plaintiff sent Defendant a notice and demand for corrective action ("CLRA Demand"), via Certified Mail, advising Mielle of its violations of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.

161.    As the alleged violations were not cured by Mielle within 30 days of the CLRA Demand, Plaintiff, on behalf of herself and the Class, also seeks damages and attorneys' fees pursuant to California Civil Code § 1782(d).

162.    As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and members of the Class are entitled to a declaration that Defendant violated the Consumer Legal Remedies Act.

163.    Under Cal. Civ. Code § 1780(a) and (b), Plaintiff and the putative Class are entitled to, and seek injunctive relief prohibiting such conduct in the future as well as damages.

164.    Attached hereto as **Exhibit A** is a sworn declaration from Plaintiff pursuant to Cal. Civ. Code § 1780(d).

**SECOND CAUSE OF ACTION**
**VIOLATIONS CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**

165.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

166.    Plaintiff brings this claim individually and on behalf of the Class for Defendants' violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

167.    Plaintiff and Defendant are each "person[s]" as defined by California Business & Professions Code § 17201.

168.    California Business & Professions Code § 17204 authorizes a private right of action on both an individual and representative basis.

169.    "Unfair competition" is defined by Business and Professions Code Section § 17200 as encompassing several types of business "wrongs," four of which are at issue here: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising."

170.    The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

171.    By and through Defendant's conduct alleged in further detail above and herein, Defendants engaged in conduct which constitutes unlawful, unfair, and/or fraudulent business practices prohibited by Bus. & Prof. Code § 17200, *et seq.*

### A. *"Unlawful" Prong*

172.   Beginning at a date currently unknown through the time of this Complaint, Defendant has committed acts of unfair competition, including those described above, by engaging in a pattern of "unlawful" business practices, within the meaning of Bus. & Prof. Code § 17200 *et seq.*

173.   Defendant is alleged to have violated California law by falsely advertising, marketing, promoting and selling the Product as: (1) containing certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp and (2) having anti-inflammatory and anti-fungal benefits; and also falsely advertising, marketing, promoting, labeling and selling the Class Products (including the Product) as being (3) made from natural ingredients and (4) "Made in the USA."

174.   Specifically, by manufacturing, distributing, and/or marketing Defendant's Class Products with unfair and deceptive claims, Defendant violates, at a minimum, the CLRA, FAL, California's Made in the USA Statute, Bus. & Prof. Code §§ 17533.7; and/or the federal Made in USA Labeling Rule, 16 C.F.R. Part 323, as well as 201(g)(1)(B) of the Federal Food, Drug and Cosmetic Act.

175.   Defendant falsely represents that Class Products are "Made in the USA" without clear and adequate qualification, despite the fact that they contain foreign sourced, grown or manufactured ingredients and/or components.

176.   Defendant also falsely represents that the Product contains certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp and has anti-inflammatory and anti-fungal benefits, despite lacking proper scientific evidence and proper instructions to back up these claims as well as failing to receive FDA approval.

177.   Additionally, Defendant claims the Class Products are "natural" yet they contain chemicals and/or synthetically created ingredients that are in no way natural.

178.   Defendant has other reasonably available alternatives to further its business interests, other than the unlawful conduct described herein, such as truthfully and lawfully advertising, marketing and labeling its Class Products.

179.   Instead, Defendant deliberately and illegally misled consumers for Defendant's own economic gain.

180.   Plaintiff and Class members reserve the right to allege other violations of law, which constitute other unlawful business practices or acts, as such conduct is ongoing and continues to this date.

### B. *"Unfair" Prong*

181.   Beginning at a date currently unknown and continuing up through the time of this Complaint, Defendant has committed acts of unfair competition that are prohibited by Bus. & Prof. Code section 17200, *et seq.*

182.   Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the statutes by engaging conduct and practices that threaten an incipient violation of law/s or violate the policy or spirit of law/s by manufacturing, distributing, and/or marketing Defendant's products with unfair and deceptive claims.

183.   Additionally, Defendant engaged in a pattern of "unfair" business practices that violate the wording and intent of the aforementioned statute/s by engaging in practices that are immoral, unethical, or unscrupulous, the utility of such conduct, if any, being outweighed by the alleged harm done to consumers and against public policy by manufacturing, distributing, and/or marketing Defendant's Class Products with unfair and deceptive claims.

184.   Defendant also engaged in a pattern of "unfair" business practices that violate the wording and intent of the above mentioned statute/s by engaging in practices, including manufacturing, distributing, marketing, and/or advertising Defendant's products with unfair and deceptive claims, wherein: (1) the injury to the consumer

was substantial; (2) the injury was not outweighed by any countervailing benefits to consumers or competition; and (3) the injury was not one that consumers could have reasonably avoided themselves.

185.    Without limitation, Defendant's knowing mislabeling and false and unlawful marketing of the Class Products constitutes an unfair and deceptive business act or practice, leading consumers to believe they are purchasing a product made in the United States without foreign or synthetic ingredients, and/or that has anti-inflammatory and anti-fungal properties, combats dandruff, and promotes hair growth by increasing blood circulation.

186.    Plaintiff could not have reasonably avoided the resulting injury.

187.    Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices.

## C. *"Fraudulent" Prong*

188.    Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiff and the Class to believe that the Class Products and/or all its ingredients were made in the United States.

189.    Particularly, the Class Products, including the Product Plaintiff purchased on January 12, 2024, are falsely represented as: (1) "Made in the USA" without clear and adequate qualification, despite the fact that they contain foreign sourced, grown or manufactured ingredients and/or components and (2) "natural" yet they contain chemicals and/or synthetically created ingredients that are in no way natural.

190.    Defendant also falsely represents that the Product contains certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp and has anti-inflammatory and anti-fungal benefits, despite lacking proper scientific evidence and proper instructions to back up these claims as well as failing to receive FDA approval or follow FDA regulations with respect to the aforementioned claims.

191.   Relying on Defendant's misrepresentations, Plaintiff purchased the Product.

192.   Like Plaintiff, Class members purchased the Class Products in reliance on Defendant's misrepresentations.

193.   Plaintiff and the Class are not sophisticated experts in ingredient sourcing, product labeling, marketing practices, and/or FDA regulations governing the Class Products.

194.   They acted reasonably in purchasing the Class Products based on their belief that Defendant's representations were truthful and lawful.

195.   Plaintiff reserves the right to allege additional conduct that constitutes further fraudulent business acts or practices.

### D. *"Unfair, Deceptive, Untrue or Misleading Advertising" Prong*

196.   In addition, Defendant's advertising is unfair, deceptive, untrue or misleading in that consumers are led to believe that the Class Products are: (1) "Made in the USA" and (2) made of "natural" ingredients. Defendant also falsely represents that the Product contains certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp and has anti-inflammatory and anti-fungal benefits, despite lacking proper scientific evidence and proper instructions to back up these claims as well as failing to receive FDA approval or follow FDA regulations with respect to the aforementioned claims.

197.   Plaintiff, a reasonable consumer, and the public would likely be, and, in fact were, deceived and misled by Defendant's advertising as they would, and did, interpret the representations in accord with their ordinary usage.

198.   Additionally, Defendant's advertising is unfair, deceptive, and misleading, as it leads consumers to believe that the Class Products are "Made in the USA", despite containing foreign-sourced, grown, and/or manufactured ingredients and/or components.

199.   Plaintiff reserves the right to allege additional conduct that constitutes further

unfair, deceptive, untrue or misleading advertising.

200.   Plaintiff and the Class lost money or property as a result of Defendant's UCL violations because, at a minimum: (a) they would not have purchased the Class Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Class Products due to Defendant's alleged misrepresentations; and (c) the Class Products did not have the U.S. sourced, natural ingredients, hair and scalp benefits and anti-inflammatory and anti-fungal benefits as represented.

201.   Defendant's alleged unlawful and unfair business practices and unfair, deceptive, untrue or misleading advertising presents a continuing threat to the Plaintiff, the Class, and the public in that Defendant continues to engage in unlawful conduct resulting in harm to consumers.

202.   Such acts and omissions by Defendant are unlawful and/or unfair and constitute a violation of Business & Professions Code §§ 17200, *et seq*.   Plaintiff reserves the right to identify additional violations by Defendant as may be established through discovery.

203.   As a direct and proximate result of the aforementioned acts and representations described above and herein, Defendant received and continues to receive unearned commercial benefits at the expense of their competitors and the public.

204.   As a direct and proximate result of Defendant's unlawful, unfair and fraudulent conduct described herein, Defendant has been and will continue to be enriched by the receipt of ill-gotten gains from customers, including Plaintiff, who unwittingly provided money to Defendant based on its representations.

205.   Plaintiff was harmed because Plaintiff's money was taken by Defendant as a result of Defendant's misleading representations regarding the Class Products.

206.   The conduct of Defendant as set forth above demonstrates the necessity for granting injunctive relief restraining such and similar acts of unfair competition pursuant to California Business and Professions Code.

207.   Unless enjoined and restrained by order of the court, Defendant will retain the ability to, and may engage in, said acts of unfair competition, and misleading advertising.

208.   As a result, Plaintiff and the Class are entitled to injunctive and monetary relief.

209.   Plaintiff wants to purchase the Class Products again but cannot be certain that she would not be misled again in the future unless and until Defendant makes appropriate changes to its Class Products' labeling and marketing as is requested herein.

210.   Pursuant to Bus. and Prof. Code § 17203, Plaintiff and the proposed Class are entitled to, and hereby seek, injunctive relief to prevent Defendant from continuing the conduct in question.

211.   Additionally, Plaintiff seeks public injunctive relief regarding Defendant's marketing and sale of Class Products represented as "Made in the USA" without clear and adequate qualification.

212.   In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

### THIRD CAUSE OF ACTION
**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

213.   Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

214.   California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with  intent … to dispose

of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

215.   Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500, *et seq*. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

216.   Plaintiff and the Class suffered tangible, concrete injuries in fact as a result of Defendant's actions as set forth herein because they purchased the Class Products in reliance on Defendant's misrepresentations.

217.   As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and members of the Class are entitled to injunctive and equitable relief and restitution.

218.   Further, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

219.   Additionally, Plaintiff seeks an order requiring Defendant to pay attorneys' fees pursuant to, *inter alia*, Cal. Civ. Proc. Code § 1021.5.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty

220.   Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

221.   From an unknown date until the filing of this Complaint, Defendant represented to Plaintiff and similarly situated individuals, through product

packaging and marketing materials, that the Class Products are: (1) "Made in the USA" and (2) made of "natural" ingredients. Defendant also represented that the Product contains certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp and has anti-inflammatory and anti-fungal benefits. These representations regarding the Class Products constitute affirmations of fact.

222.   Defendant's explicit claims that the Class Products are: (1) "Made in the USA" and (2) made of "natural" ingredients; and that the Product (3) contains certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp and (4) has anti-inflammatory and anti-fungal benefits, all pertain directly to the nature, ingredients, benefits and composition of the products, forming a fundamental part of the bargain between Defendant and purchasers.

223.   Defendant's statements—featured prominently on the Class Products' labels and in their marketing and advertising—constitute an express warranty regarding the products' origin, ingredients, hair and scalp benefits and anti-inflammatory and anti-fungal benefits.

224.   Relying on these express warranties, Plaintiff and Class members purchased the Class Products, believing these warranties.

225.   Defendant breached its express warranties because: (1) the Class Products contained foreign-sourced, grown, or manufactured ingredients and/or components that were not clearly and adequately disclosed; (2) the Class Products contain synthetic and/or chemically derived ingredients that are not natural in any way; and (3) the Class Products do not provide the misleadingly and unlawfully represented hair and scalp benefits, including hair growth, increased circulation, scalp oxygenation, and anti-inflammatory and anti-fungal effects.

226.   As a result of Defendant's breach, Plaintiff and Class members suffered harm and are entitled to recover either the full purchase price of the Class Products or the

difference between their actual value and the value they would have held if Defendant's representations were lawful and true.

227.   Plaintiff and Class members did not receive the benefit of their bargain and sustained additional injuries as alleged herein.

228.   Had Plaintiff and Class members known the true nature of the Class Products, they either would not have purchased the products or would not have paid the price Defendant charged.

229.   Defendant's misrepresentations were a substantial factor in causing Plaintiff and the Class economic harm.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**

230.   Plaintiff pleads this unjust enrichment cause of action in the alternative to any contract-based claims.

231.   Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

232.   Under California law, the elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another.

233.   Plaintiff and members of the Class conferred non-gratuitous benefits upon Defendant by purchasing the Class Products, which Defendant falsely represented regarding their origin, ingredients, and benefits.

234.   Plaintiff and members of the Class allege that Defendant owes them money for the conduct alleged herein that was unjustly obtained.

235.   An undue advantage was taken from Plaintiff's and members of the Class's lack of knowledge of the deception, whereby money was extracted to which Defendant had no legal right.

236.   Defendant is therefore indebted to Plaintiff and members of the Class in a sum certain, specifically the amount of money each of them paid for the Class Products, which Defendant in equity and good conscience should not retain.

237.   Defendant is therefore liable to Plaintiff and members of the Class in the amount unjustly enriched.

238.   Defendant's retention of any benefit collected directly and indirectly from Plaintiff and members of the Class violates principles of justice, equity, and good conscience.

239.   As a result, Defendant has been and continues to be unjustly enriched.

240.   Plaintiff and the Class are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiff and members of the Class the benefits it has unjustly obtained.

241.   Defendant accepted or retained such benefits with knowledge that the rights of Plaintiff and members of the Class were being violated for financial gain.

242.   Defendant has been unjustly enriched in retaining the revenues and profits from Plaintiff and members of the Class, which retention under these circumstances is unjust and inequitable.

243.   As a direct and proximate result of Defendant's unlawful practices and retention of the monies paid by Plaintiff and members of the Class, Plaintiff and the Class have all suffered concrete harm and injury.

244.   Defendant's retention of the non-gratuitous benefits on them by Plaintiff and members of the Class would be unjust and inequitable.

245.   Plaintiff and members of the Class are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by this Court.

//

//

## SIXTH CAUSE OF ACTION
### Negligent Misrepresentation

246.   Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

247.   Defendant has represented to the public, including Plaintiff and the Class, through its marketing, advertising, labeling and by other means, that the Class Products are: (1) "Made in the USA" and (2) made of "natural" ingredients. Defendant also represented that the Product contains certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp and has anti-inflammatory and anti-fungal benefits. Such representations are false, misleading and/or not approved by the FDA.

248.   Plaintiff alleges that Defendant made those representations herein with the intent to induce the public, including Plaintiff and the putative Class members, to purchase the Class Products.

249.   Plaintiff and other similarly situated consumers, saw, believed, and relied upon Defendant's misrepresentations, and purchased Defendant's Class Products as a result of such reliance.

250.   At all times relevant, Defendant made such misrepresentations alleged herein when Defendant knew or should have known such representations were inaccurate and misleading.

251.   As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and similarly situated consumers were induced to purchase Defendant's Class Products, purchase more of them, pay a higher price, or choose them over competitors' products.

252.   These unlawful, unfair, and deceptive acts caused damages in an amount to be determined at trial during the Class Period.

//

## SEVENTH CAUSE OF ACTION
### Intentional Misrepresentation

253.   Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

254.   Beginning at a date currently unknown and continuing to the time of the filing of this Complaint, Defendant knowingly represented to Plaintiff and others similarly situated, through product labeling and marketing practices, that the Class Products are: (1) "Made in the USA" and (2) made of "natural" ingredients. Defendant also represented that the Product contains certain hair and scalp benefits, including dandruff relief, hair growth, and increased circulation to the scalp and has anti-inflammatory and anti-fungal benefits. Such representations are false, misleading and/or not approved by the FDA.

255.   Defendant acted intentionally by willfully and purposefully disseminating misrepresentations about the Class Products through labeling, online and offline marketing, advertising, and social media.

256.   However, as described above, Defendant's representations regarding the Class Products are false, unlawful, unfair and/or misleading.

257.   Defendant knew such representations regarding the Class Products were false, unfair, unlawful and/or misleading and continued over a period of years to make such representations.

258.   Defendant further knew that retailers were advertising its Class Products as in false or misleading ways, because Defendant designed, manufactured, and affixed the product labeling to its Class Products before supplying them to the retailers and also drafted and/or approved the relevant marketing materials

259.   Plaintiff and the putative Class members saw, believed, and relied upon Defendant's representations in making the decision to purchase Defendant's Class Products.

260.   As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the putative Class members were damaged in an amount to be determined at trial.

261.   By engaging in the acts described above, Defendant's actions entitle Plaintiff and the putative Class to recover exemplary or punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendant as follows, seeking equitable relief in the alternative to legal relief:

- Certification of this action as a class action;

- Appointment of Plaintiff as Class Representative;

- Appointment of Plaintiff's attorneys as Class Counsel;

- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutory claims asserted herein;

- An Order declaring that Defendant's conduct violated the CLRA, California Civil Code §§ 1750, *et seq.*, and awarding injunctive relief pursuant to Cal. Civ. Code § 1780(a) and (b);

- An Order declaring that Defendant's conduct violated California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*; and awarding injunctive relief pursuant to Bus. & Prof. Code § 17203;

- An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

- An Order requiring the imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains, compelling Defendant to pay restitution to Plaintiff and all members of the Class, and to restore to Plaintiff and Class members all funds acquired through any act or practice declared by this Court to be unlawful, fraudulent, unfair, or deceptive; in violation of laws, statutes,

or regulations; or constituting unfair competition, along with pre- and post-judgment interest thereon;

- For pre and post-judgment interest on all amounts awarded;
- For an order of restitution and all other forms of equitable monetary relief, as pleaded, including awarding such relief pursuant to Bus. & Prof. Code § 17535; and/or Bus. & Prof. Code § 17203;
- Actual damages under California Civil Code § 1780(a);
- For public injunctive relief as pleaded or as the Court may deem proper;
- That Defendant be enjoined from continuing the wrongful conduct alleged herein and required to comply with all applicable laws;
- Punitive damages including under California Civil Code § 1780(a) and/or Cal. Civ. Code § 3294;
- General and compensatory damages in an amount to be determined at trial;
- That Plaintiff and each of the other members of the Class recover their costs of suit, including reasonable attorneys' fees and expenses pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5 and California Civil Code § 1780; and,
- That Plaintiff and the members of the Class be granted any other relief the Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

262. Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: February 21, 2025                   Respectfully submitted,

                                    **KAZEROUNI LAW GROUP, APC**

                                    By: _/s/ *Abbas Kazerounian, Esq.*
                                    Abbas Kazerounian, Esq.
                                    *ATTORNEYS FOR PLAINTIFF*