JOSHUA E. ANDERSON (SBN 211320)
josh.anderson@faegredrinker.com
DAVID A. BELCHER (SBN 330166)
david.belcher@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: +1 310 203 4000
Facsimile: +1 310 229 1285

Attorneys for Defendant
MIELLE ORGANICS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON ALLEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MIELLE ORGANICS, LLC,<br><br>Defendant. | Case No. 8:25-cv-00342-FWS-KES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MIELLE ORGANICS, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: July 24, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Fred W. Slaughter<br>Ctrm: 10D<br><br>Complaint Filed: February 21, 2025<br><br>*[Notice of Motion and Motion; Request for Judicial Notice; and [Proposed] Order, filed concurrently herewith]* |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................... 7

II.  FACTUAL BACKGROUND .................................................................. 8

    A.  Mielle and the Product. ................................................................. 8

    B.  Plaintiff sues based upon promotional statements about the
    Product. ........................................................................................... 9

        1.  Allegations about Hair and Scalp Benefits. .............................. 10

        2.  Allegations about Anti-Inflammatory and Anti-Fungal
        Properties. ................................................................................ 11

        3.  Allegations about Natural Ingredients. ...................................... 11

        4.  Allegations about "Made in the USA" ...................................... 12

III.  LEGAL STANDARD ............................................................................ 12

IV.  ARGUMENT ......................................................................................... 13

    A.  Plaintiff Lacks Standing to Assert Claims about Products She
    Did Not Purchase. ......................................................................... 13

    B.  Plaintiff's Claims About the Lone Product She Purchased Fail
    as a Matter of Law. ....................................................................... 14

        1.  Representations that the Product's ingredients "combat
        dandruff," promote "faster and thicker hair," "increase
        blood circulation," and result in "more oxygen to be
        carried to your scalp" are not actionable. .................................. 15

        2.  Representations that rosemary has "anti-inflammatory
        and anti-fungal properties" are not actionable .......................... 19

        3.  Representations about "natural" ingredients are not
        actionable. ................................................................................ 20

        4.  Representations about "Made in the USA" are not
        actionable. ................................................................................ 22

    C.  Unjust Enrichment is not a Standalone Cause of Action. ............. 24

    D.  Plaintiff Lacks Article III Standing to Seek Injunctive Relief. ........... 24

V.  CONCLUSION ...................................................................................... 25

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMO OF P'S AND A'S ISO DEFENDANT MIELLE ORGANICS, LLC'S MOTION TO DISMISS

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                          **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 12

*Astiana v. Hasin Celestial Group, Inc.*,
   783 F. 3d 753 (9th Cir. 2015)........................................................8, 24

*Bank of New York Mellon v. Citibank N.A.*,
   8 Cal. App. 5th 935 (2017).................................................................. 24

*Bauman v. Australian Gold, LLC*,
   2019 WL 2329885 (S.D. Cal. May 19, 2019) ..................................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 12

*Bitton v. Gencor Nutrientes, Inc.*,
   654 Fed. Appx. 358 (9th Cir. 2016) .................................................... 22

*Blennis v. Hewlett–Packard Co.*,
   2008 WL 818526 (N.D. Cal. March 25, 2008) ................................... 15

*Bruno v. BlueTriton Brands*,
   2024 WL 3993861 (C.D. Cal. Aug. 8, 2024) ...................................... 18

*Bryan v. Del Monte Foods, Inc.*,
   2024 WL 4866952 (9th Cir. Nov. 22, 2024) ....................................... 21

*Buckman Co. v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001) ................................................................18, 19, 20

*Corbett v. Pharmacare U.S., Inc.*,
   544 F. Supp. 3d 996 (S.D. Cal. 2021) ...........................................16, 19

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018).............................................................. 24

*Davidson v. Spout Foods, Inc.*,
   106 F.4th 842 (9th Cir. 2024) ............................................................. 18

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010)........................................................... 24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

*Ebner v. Fresh, Inc.*,
838 F. 3d 958 (9th Cir. 2016) ............................................................. 23

*Fitzpatrick v. Tyson Foods, Inc.*,
2016 WL 5395955 (E.D. Cal. Sept. 27, 2016) .................................... 23

*Hood v. Handi-Foil Corp.*,
2024 WL 4008711 (N.D. Cal. Aug. 29, 2024) .................................... 23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................. 24

*Kane v. Chobani, Inc.*,
2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ................................... 13

*Kau v. Lawrence*,
2024 WL 3458018 (C.D. Cal. May 21, 2024) ..................................... 13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................ 12

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .............................................................. 9

*Kurin, Inc. v. ICU Med., Inc.*,
2024 WL 5416672 (C.D. Cal. Nov. 8, 2024) ..................................... 12

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017) ............................................................ 15

*McGinty v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ............................................................ 21

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ................................................................ 21

*Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*,
691 F. Supp. 3d 1113 (N.D. Cal. 2023) ........................................ 14, 15

*Myers-Taylor v. Ornua Foods N. Am., Inc.*,
2019 WL 424703 (S.D. Cal. Feb. 4, 2019) ........................................ 12

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
107 Cal. App. 4th 1336 (2003) .......................................................... 15

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    926 F.3d 528 (9th Cir. 2019) ............................................................. 24

*Newcal Indus., Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008) ........................................................... 16

*Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*,
    48 F.4th 1040 (9th Cir. 2022) ........................................................... 18

*Palomares v. Bear Stearns Residential Mortg. Corp.*,
    2008 WL 686683 (S.D. Cal. March 13, 2008) ................................... 15

*Perez v. Nidek Co., Ltd.*,
    711 F.3d 1109 (9th Cir. 2013) ........................................................... 18

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ............................................... 19

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ............................................................. 13

*Sinatro v. Barilla Am., Inc.*,
    635 F. Supp. 3d 858 (N.D. Cal. 2022) ......................................... 7, 13

*Somers v. Beiersdorf, Inc.*,
    467 F. Supp. 3d 934 (S.D. Cal. 2020) ............................................... 18

*Stephenson v. Neutrogena Corp.*,
    2012 WL 8527784 (N.D. Cal. July 27, 2012) .................................... 14

*U.S. v. An Article of Drug 47 Shipping Cartons, More or Less, Helene
    Curtis Magic Secret*, 331 F. Supp. 912 (D. Md. 1971) ..................... 17

*United Food & Commercial Workers v. Teikoku Pharma USA, Inc.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) ............................................... 24

*United States v. Article of Drug, Bacto-Unidisk*,
    394 U.S. 784 (1969) .......................................................................... 17

*Whiteside v. Kimberly Clark Corp.*,
    108 4th 771, 784 (9th Cir. 2024) ...................................................... 21

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ............................................. 13

*Yamasaki v. Zicam LLC*,
  2021 WL 4951435 (N.D. Cal. Oct. 25, 2021) ...................................................... 16

**Statutes, Rules & Regulations**

16 C.F.R. § 323.2 ..................................................................................................... 22

21 C.F.R. § 101.9(c)(8)(v) ....................................................................................... 12

21 U.S.C. § 321(i) .................................................................................................... 17

21 U.S.C. § 337(a) ................................................................................................... 17

Cal. Bus. & Prof. Code § 17533.7 .......................................................................... 23

Cal. Bus. & Prof. Code §§ 17533.7(b), (c)(1) ........................................................ 23

Federal Food, Drug and Cosmetic Act ................................................. 11, 17, 18, 20

Fed. R. Civ. P. 8 ...................................................................................................... 22

Fed. R. Civ. 9(b) ....................................................................................... 12, 13, 16, 22

Fed. R. Civ. 12(b)(6) ............................................................................................... 12

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. __INTRODUCTION__

Plaintiff Sharon Allen ("Plaintiff") allegedly purchased a single, two-ounce container of Rosemary Mint Scalp & Hair Strengthening Oil (the "Product") made by Mielle Organics, LLC ("Mielle") on Amazon in January 2024, for about $8.99. Plaintiff now brings a putative class action concerning alleged misrepresentations about not only that Product, but also 96 other products made by Mielle. The Court should dismiss Plaintiff's complaint in its entirety for at least four reasons.

*First*, Plaintiff lacks standing to assert claims about any product other than the Rosemary Mint Scalp & Hair Strengthening Oil that she purchased. It is well-settled that parties can assert claims concerning products they did not purchase only if "the products and alleged misrepresentations are substantially similar to products they did purchase." *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 877 (N.D. Cal. 2022). Here, Plaintiff has failed to meet her burden of sufficiently pleading facts that demonstrate substantial similarity among all 97 putative class products.

*Second*, Plaintiff's claims about the lone Product she purchased fail as a matter of law. Those claims are all premised upon the following four groups of allegedly deceptive statements: (1) that the Product's ingredients "combat dandruff," promote "faster and thicker hair," "increase blood circulation," and result in "more oxygen to be carried to your scalp;" (2) that the rosemary in the Product has "anti-inflammatory and anti-fungal properties;" (3) that the Product is "natural" or "uses natural ingredients;" and (4) that the Product was "Made in the USA." Compl. ¶¶ 24, 47, 60, 65, 78. None of these allegedly deceptive statements can serve as the basis for any cause of action. Plaintiff has not alleged facts showing that a reasonable consumer would be misled by them and has not sufficiently pleaded that those alleged misrepresentations were material to her or that she relied upon them. Moreover, federal law preempts any claims premised upon statements about the Product's hair and scalp, anti-inflammatory, or anti-fungal benefits and the representation that the Product was "Made in the USA" is shielded by California's safe harbor doctrine.

***Third***, Plaintiff's unjust enrichment claim fails because "there is not a standalone cause of action for 'unjust enrichment'" under California law. *Astiana v. Hasin Celestial Group, Inc.*, 783 F. 3d 753, 762 (9th Cir. 2015).

***Fourth***, Plaintiff lacks Article III standing to seek injunctive relief because she has not plausibly alleged (or alleged at all) that she is likely to suffer the same purported injury in the future.

For each of these reasons, the Court should grant Mielle's motion and dismiss Plaintiff's complaint in its entirety.

## II.    FACTUAL BACKGROUND

### A.    Mielle and the Product.

In 2014, Monique Rodriguez, a registered nurse and mother of two, founded Mielle after her haircare routine became popular among her social media followers. Compl. ¶ 19. Since then, Mielle has expanded into an international cosmetic brand that encompasses several product collections, including products for haircare, skincare, and children. *Id.* ¶ 20.

One of Mielle's products is its Rosemary Mint Scalp & Hair Strengthening Oil, which Mielle sells on its own website, on Amazon, on other websites, and at brick-and-mortar stores. The label of the Rosemary Mint Scalp & Hair Strengthening, as it appeared in January 2024, is shown below.



*See* Request for Judicial Notice ("RJN"). Ex. A.

The Product had received 111,798 ratings on Amazon as of May 16, 2025. RJN Ex. B. Of the Amazon users who rated the Product, 87% gave it a 4- or 5-star rating. *Id.* Many of the "Top reviews" of the Product from verified purchasers describe the positive effect that the Product has had on the users' hair. For example, one reviewer stated that the Product was "doing great for [her] hairline" and was "absolutely AMAZING" for stimulating the growth of her eyelashes and eyebrows. *Id.* Another reviewer commented that the Product "is what you need if you're wanting to start your hair growth era or just for a healthy feeling scalp/hair." *Id.*

Reviews of the Product on Mielle's website are also overwhelmingly positive. There, the Product had received 9,070 reviews from users as of May 16, 2025, with an average rating of 4.8 stars (out of 5). RJN Ex. C. Many of the Product's reviews on Mielle's website also describe the Product's positive effect on users' hair. For example, one reviewer wrote the "rosemary and mint oil has [her] edges growing thicker," while another claimed that since she started using the Product, her "hair is growing in a much healthier way." *Id.* Another user explained that the Product "has done wonders for [her] scalp and hair. I saw a decrease in dandruff and my hair looks healthier than ever." *Id.* That user also said the Product "is a MUST-HAVE" in her "daily beauty regime." *Id.*[1]

**B.    Plaintiff sues based upon promotional statements about the Product.**

Plaintiff alleges that, in January 2024, she searched online while "looking to purchase hair care products specifically for scalp and hair health, strength and growth, and containing natural ingredients sourced from the United States." Compl. ¶ 103. She alleges that after reading unspecified "information and marketing

---

[1] This Court may consider the reviews of the Product contained on the Mielle and Amazon websites in ruling on this motion to dismiss because Plaintiff cites and quotes those websites in her Complaint and thereby incorporates them by reference. *See* Compl. ¶¶ 2, 24 n. 3, 28; *see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also generally* RJN at 2:11–3:2.

materials online" about the Product, she saw it available on Amazon. *Id*. ¶ 104.
Plaintiff pleads that she saw the following statements on the Product's Amazon page:

> "SOOTHE DRY SCALP: This rich blend of over 30 essential oils and
> nutrients deeply penetrates the scalp *to increase circulation*, *combat
> dandruff*, and comfort itchy, sensitive skin while working to strengthen,
> lengthen, nourish, and protect hair[.]
>
> *Faster and thicker hair*
> Both rosemary and mint essential oils are known to *increase blood
> circulation* which allows for *more oxygen to be carried to your scalp*.
> *More oxygen will stimulate your hair, resulting in faster and thicker
> hair*."

Complaint ¶ 106 (emphasis original). Plaintiff also alleges that she viewed pictures
of the Product's label on Amazon and saw the representation that the Product was
"Made in the USA." *Id*. ¶ 107. Plaintiff alleges that, based on these representations,
she purchased the Product for about $8.99. *Id*. ¶ 108.

On February 21, 2025, Plaintiff filed her Complaint. She asserts claims for: (1)
violations of the CLRA; (2) violations of the UCL; (3) violations of the FAL; (4)
breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation;
and (7) intentional misrepresentations. Compl. ¶¶ 141–261. All of Plaintiff's claims
are premised upon four purported groups of misrepresentations about the Product.

## 1.    Allegations about Hair and Scalp Benefits

Plaintiff alleges that Mielle advertises the Product as having ingredients that
"combat dandruff," promote "faster and thicker hair," "increase blood circulation,"
and result in "more oxygen to be carried to your scalp." Compl. ¶ 24. Plaintiff asserts
that similar representations also appear on various other websites and social media
posts, but she does not allege that she even saw, much less relied on, any other
specific representations on any other specific websites or social media pages before
making her purchase. *Id*. ¶¶ 27–31.

Plaintiff alleges that "no scientific agreement exists that any of the individual

ingredients of the Product have" these claimed benefits. Compl. ¶ 33. Plaintiff also contends the Product is an "unapproved" and "misbranded" drug under the Federal Food, Drug and Cosmetic Act ("FDCA"). *Id*. ¶¶ 40–41.

### 2.    Allegations about Anti-Inflammatory and Anti-Fungal Properties.

Plaintiff alleges that Mielle advertises the Product as having "anti-inflammatory" and "anti-fungal" properties on its website and other "third-party websites as well as social media." Compl. ¶¶ 47–48. Plaintiff does not allege facts suggesting that any alleged statement about the Product's anti-inflammatory and anti-fungal properties appeared on Amazon or the Product's label, and she does not specifically allege that she ever saw these representations about such properties before purchasing the product. *Id*; *see also id.* ¶¶ 106–107.

Plaintiff asserts that representations about the Product's "anti-inflammatory" and "anti-fungal" benefits are actionable because there purportedly is "no scientific agreement" that the Product has such properties. *Id*. ¶ 51. She also alleges that such representations render the Product an "unapproved" and "misbranded" drug under the FDCA. *Id.* ¶¶ 51–54.

### 3.    Allegations about Natural Ingredients.

Plaintiff asserts that Mielle advertises the Product as a "natural hair care product[]." Compl. ¶ 60. She alleges representations about the Product being natural "are/were displayed on Mielle's website, on its Amazon store page and in descriptions of Mielle's products on other third-party retailer websites." *Id*. ¶ 60. In support of these allegations, Plaintiff provides examples of the word "natural" appearing on various websites, including Mielle's website. *Id*. ¶¶ 64–67. But Plaintiff does not allege that she relied upon any statements contained on Mielle's website before making her purchase. *Id*. ¶ 107. Plaintiff alleges the statement that the Product is "natural" is false because the Product contains some "synthetically produced"

ingredients like "benzyl nicotinate" and "ascorbic acid."[2] *Id.* ¶ 69.

### 4.    Allegations about "Made in the USA"

Plaintiff alleges that the Product's label represents that it was "Made in the USA." Compl. ¶ 78. She claims that, despite this representation, the Product is made "and/or substantially produced with components / ingredients that are manufactured, grown and/or sourced from outside of the United States." *Id.* ¶ 80. In support of this assertion, Plaintiff speculates that two of the Product's 31 listed ingredients—"tea tree oil" and coconut oil"—are "not from the United States." *Id.* ¶ 81. Plaintiff also alleges that the "Made in the USA" representation is made as to several other Mielle products that she did not purchase. *Id.* ¶¶ 82–85.

## III.    LEGAL STANDARD

To "withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Kurin, Inc. v. ICU Med., Inc.*, 2024 WL 5416672 at *2 (C.D. Cal. Nov. 8, 2024) (Slaughter, J.) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facts indicating the "'mere possibility of misconduct'. . . fall short of meeting this plausibility standard." *Id.* at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief . . . [is a] context-specific task that requires the reviewing court to draw on its judicial experience and *common sense*." *Iqbal*, 556 U.S. at 679 (emphasis added).

In addition, Rule 9(b)'s heightened requirements apply to consumer protection claims, like Plaintiff's, that sound in fraud. *See Myers-Taylor v. Ornua Foods N. Am., Inc.*, 2019 WL 424703, at *4 (S.D. Cal. Feb. 4, 2019) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). Under Rule 9(b), a party must "state with

---

[2] Ascorbic Acid is Vitamin C, which is, in fact, a naturally occurring compound. 21 C.F.R. § 101.9(c)(8)(v) (recognizing that "Vitamin C" and "Ascorbic acid" are "synonym[s]" that may be used in the alternative in a product's labeling).

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, Rule 9(b) requires "the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kau v. Lawrence*, 2024 WL 3458018 at *8 (C.D. Cal. May 21, 2024) (Slaughter, J.) (citing *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010)).

## IV. <u>ARGUMENT</u>

### A. Plaintiff Lacks Standing to Assert Claims about Products She Did Not Purchase.

Plaintiff lacks standing to assert claims based upon any product other than the Rosemary Mint Scalp & Hair Strengthening Oil that she purchased. Compl. ¶ 7. Under Ninth Circuit precedent, plaintiffs can assert claims about products they did not purchase only if "the products and alleged misrepresentations are substantially similar" to products they did purchase. *Sinatro v. Barilla Am., Inc.*, 635 F.Supp.3d 858, 877 (N.D. Cal. 2022). Courts "will not assume that each of [many] subtly different Products is like all the others." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1142 (N.D. Cal. 2013). Accordingly, plaintiffs bear the burden of establishing that putative class products are "substantially similar" to each other. *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *37–38 (N.D. Cal. Sept. 19, 2013). To meet this burden, "plaintiffs have to say more, especially when they are asserting standing as to Products they did not purchase—otherwise their pleadings amount to unacceptably bare legal conclusions." *Id.* For example, in *Bauman v. Australian Gold, LLC*, 2019 WL 2329885 at *2 (S.D. Cal. May 19, 2019), the district court held that the plaintiff (who was represented by the same counsel as represent Plaintiff here) lacked standing to bring claims about more than 70 unpurchased products. In doing so, the court held the plaintiff's allegations that all the unpurchased products contained a purportedly false "Made in the USA" representation did not demonstrate

1    sufficient similarity because the complaint was "devoid of any mention of the

2    ingredients contained in the unpurchased products." *Id.*

3        Here, Plaintiff's only allegation concerning the supposed similarity of the

4    Product to the 96 other supposed "Class Products" is that the other "Class Products"

5    purportedly "also display the same unqualified 'Made in the USA' representation (or

6    a similar unqualified U.S. origin claim) and false 'natural' claims." Compl. ¶ 8. These

7    bare allegations are insufficient to show substantial similarity between all 97 putative

8    "Class Products," especially because many "Class Products" do not bear even

9    passing resemblance to Rosemary Mint Scalp & Hair Strengthening Oil that Plaintiff

10   purchased. For example, the "Class Products" include numerous items that have

11   nothing to do with hair, including a "Pomegranate & Honey Hydrating Face Mask"

12   and "Pomegranate & Honey Vitamin C Under Eye Gel Drops." *See* Compl., Ex. B.

13   Moreover, Plaintiff alleges nothing about the ingredients of the other 96 products,

14   including which, if any, of those ingredients were synthetic or sourced from outside

15   of the United States. Because Plaintiff has failed to satisfy her burden to sufficiently

16   plead substantial similarity, the Court should dismiss Plaintiff's claims to the extent

17   they are premised upon products that Plaintiff did not purchase. *See Stephenson v.*

18   *Neutrogena Corp.*, 2012 WL 8527784 at *1 (N.D. Cal. July 27, 2012) (dismissing

19   with prejudice claims concerning six discrete "Neutrogena Naturals products" where

20   plaintiff purchased only a "purifying facial cleanser").

21   **B.    Plaintiff's Claims About the Lone Product She Purchased Fail as a Matter of Law.**

22

23       Lacking standing to sue based on products she did not purchase, all that

24   remains is Plaintiff's claims about her purchase of the Product. This Court should

25   dismiss all of those claims because they fail as a matter of law.

26       Plaintiff's UCL, CLRA, and FAL claims "are all governed by the 'reasonable

27   consumer' test . . . . Thus, to state a claim, [plaintiffs] must plausibly plead that

28   members of the public are likely to be deceived." *Mosher-Clark v. Gravity Defyer*

1  *Med. Tech. Corp.*, 691 F. Supp. 3d 1113, 1118 (N.D. Cal. 2023) (citation omitted).
2  Those claims also require plaintiffs to plead reliance. *Id.* at 1119. Similarly, negligent
3  and intentional misrepresentation claims require plaintiffs to plead, among other
4  elements, "a misrepresentation of fact" and "justifiable reliance on the
5  misrepresentation." *Palomares v. Bear Stearns Residential Mortg. Corp.*, 2008 WL
6  686683, at *4 (S.D. Cal. March 13, 2008). To plead a claim for breach of express
7  warranty, plaintiffs must allege facts showing, among other things, that a defendant
8  "(1) made an affirmation of fact or promise or provided a description of its goods;
9  (2) the promise or description formed part of the basis of the bargain; (3) the express
10 warranty was breached; and (4) the breach caused injury to the plaintiff." *Blennis v.
11 Hewlett–Packard Co.*, 2008 WL 818526, at *2 (N.D. Cal. March 25, 2008).

12 Here, Plaintiff has not alleged facts demonstrating that any of the purported
13 misrepresentations upon which all of her claims are premised is actionable.

14 **1.  Representations that the Product's ingredients "combat dandruff," promote "faster and thicker hair," "increase blood circulation," and result in "more oxygen to be carried to your scalp" are not actionable.**

16 As explained above, Plaintiff challenges statements that the Product's
17 ingredients "combat dandruff," promote "faster and thicker hair," "increase blood
18 circulation," and result in "more oxygen to be carried to your scalp." Compl. ¶ 24.

19 Under settled law, the UCL, CLRA, and FAL do not allow private suits to be
20 based on the argument that an advertising claim is unsubstantiated. *See Kwan v.
21 SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) ("[N]either the UCL nor the
22 CLRA provides Kwan with a private cause of action to enforce the substantiation
23 provisions of California's unfair competition or consumer protection laws."); *Nat'l
24 Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th
25 1336, 1346  (2003) (rejecting arguments that "(1) a false advertising defendant
26 should have the burden of producing evidence substantiating the challenged
27 advertising claim; and (2) a false advertising defendant should have the burden of

proving the challenged advertising claim to be true"). Instead, only advertising claims that have "actually been disproved," and thus are demonstrably false, are actionable. *See Eckler*, 2012 WL 5382218, at *3; *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1009 (S.D. Cal. 2021) (holding that a UCL and CLRA claims are not cognizable if all it shows is that "clinical studies have not conclusively established that Defendant's Products are effective").

Here, Plaintiff does not even plausibly allege the representations that ingredients in the Product "combat dandruff," promote "faster and thicker hair," "increase blood circulation," and result in "more oxygen to be carried to your scalp" are false, much less do so with the particularity Rule 9(b) demands. Indeed, for example, Plaintiff does not even allege that the Product failed to provide these benefits to her. Moreover, it is doubtful that Plaintiff is capable of plausibly alleging the falsity those representations in any amended complaint. As explained *supra*, the Product's reviews on Amazon and Mielle's website are overwhelmingly positive, with many of those reviews on both websites specifically mentioning the Product's hair and scalp benefits. *See* RJN Exs. B & C; *see also supra* Sec. II.A.

Rather than allege that these representations are false, Plaintiff impermissibly asserts that "no scientific agreement exists that any of the individual ingredients of the Product have such benefits." Compl. ¶ 33. Because it is "well settled that private litigants may not bring false advertising claims based on an alleged lack of substantiation," these representations cannot serve as the predicate for any of Plaintiff's claims. *Yamasaki v. Zicam LLC*, 2021 WL 4951435 at *4 (N.D. Cal. Oct. 25, 2021). Each of these statements also amounts to non-actionable puffery because they are "general subjective claim[s]" that are not "quantifiable." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).[3]

───────────────

[3] Plaintiff also cannot sufficiently plead that the representation that the Product's ingredients "combat dandruff" was material to her, that she relied upon that

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Absent allegations of falsity, all that remains is Plaintiff's contention that

2    statements that the Product's ingredients "combat dandruff," promote "faster and

3    thicker hair," "increase blood circulation," and result in "more oxygen to be carried

4    to your scalp" make the Product an "unapproved" or "misbranded" drug under the

5    FDCA. Compl. ¶¶ 30–41. "[T]he word 'drug' is a term of art for the purposes of [the

6    Act]." *United States v. Article of Drug, Bacto-Unidisk*, 394 U.S. 784, 793 (1969).

7    Specifically, "drug[s]" are "articles intended for use in the diagnosis, cure,

8    mitigation, treatment, or prevention of disease," or "intended to affect the structure

9    or any function of the body." *Id*. at 789. In contrast, the FDCA defines "cosmetic[s]"

10    as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into,

11    or otherwise applied to the human body . . . for cleansing, beautifying, promoting

12    attractiveness, or altering the appearance." 21 U.S.C. § 321(i). Here, Plaintiff has not

13    plausibly alleged that the Product is "intended for use in the diagnosis, cure,

14    mitigation, treatment, or prevention of disease or a bodily function" merely because

15    promotional statements suggest that the Product's ingredients "combat dandruff,"

16    promote "faster and thicker hair," "increase blood circulation," and result in "more

17    oxygen to be carried to your scalp." Indeed, courts in other jurisdictions have rejected

18    similar claims. *See U.S. v. An Article of Drug 47 Shipping Cartons, More or Less,*

19    *Helene Curtis Magic Secret*, 331 F. Supp. 912, 917 (D. Md. 1971) (holding lotion

20    was not a drug under the FDCA despite representation the lotion had "dramatic power

21    to smooth away crows feet, puffy under eye circles, laugh, frown, and throat lines").

22    In all events, federal law preempts Plaintiff's claims that the Product is an

23    "unapproved" or "misbranded" drug in violation of the FDA. There is no private right

24    of action under the FDCA. 21 U.S.C. § 337(a). Instead, Congress provided that "[t]he

25    FDA is responsible for investigating potential violations of the FDCA, and the Act

26

---

27    representation, or that it caused her harm because she does not even allege that she

28    had dandruff, let alone that she was looking for a product to combat dandruff.

provides the agency with a range of enforcement mechanisms." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013).

The Supreme Court has held that most attempts to use state law to enforce FDCA requirements "conflict with, and are therefore impliedly preempted by, federal law." *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 348, 350 (2001). In the process, the Supreme Court rejected the proposition "that any violation of the FDCA will support a state-law claim," and state-law claims that "exist solely by virtue of" a violation of the FDCA are implicitly preempted. *Id.* at 353. As a result, the Ninth Circuit has repeatedly reaffirmed that if a plaintiff is "suing *because* the conduct violates the FDCA," meaning "the existence of these federal enactments is a critical element in [plaintiffs' case," then "such a claim would be impliedly preempted under *Buckman*." *Perez*, 711 F.3d at 1119-20; *see also Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 849 (9th Cir. 2024) (implied preemption applies when "a claim would require litigating . . . whether an FDCA violation had occurred"); *Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*, 48 F.4th 1040, 1049 (9th Cir. 2022) (affirming dismissal of state-law claim that "says in substance 'comply with the FDCA'" because any contrary result "would, in effect, permit [the plaintiff] to assume enforcement power which the statute does not allow").

Plaintiff's claim is exactly the type of claim preempted under *Buckman* and its progeny. Plaintiff alleges that Mielle violated the FDCA by failing to obtain FDA approval to sell the Product as a drug. Compl. ¶ 53. Even assuming that the product *is* a drug—and it is not—this theory of lability is "contingent upon standards set by the FDCA and alleged violations of the FDA's regulations." *Bruno v. BlueTriton Brands*, 2024 WL 3993861, at *3 (C.D. Cal. Aug. 8, 2024); *see also Somers v. Beiersdorf, Inc.*, 467 F. Supp. 3d 934, 937 (S.D. Cal. 2020) (holding that claims based upon allegation that the defendant "engaged in illegal conduct by unlawfully making skin firming representations about its Nivea CoQ10 Lotion . . . without obtaining required FDA approval" were preempted). Since Plaintiff's claims do not rely "on

traditional state tort law which . . . predate[s] the federal enactments in question[]," *Buckman*, 531 U.S. at 353, they are implicitly preempted.

For the reasons discussed above, representations that ingredients in the Product "combat dandruff," promote "faster and thicker hair," "increase blood circulation," and result in "more oxygen to be carried to your scalp" are not actionable.

### 2. Representations that rosemary has "anti-inflammatory and anti-fungal properties" are not actionable.

While Plaintiff challenges promotional statements about the "anti-inflammatory and anti-fungal properties" of one of the Product's ingredients, such statements cannot support Plaintiff's claims for the same reasons described above.

Plaintiff has not adequately pleaded that any representation about the Product's anti-inflammatory and anti-fungal properties is actionable. Instead, Plaintiff has merely pleaded that "*no scientific agreement exists* that any of the individual ingredients of the Product have" anti-inflammatory and anti-fungal benefits. Compl. ¶ 52 (emphasis added). In other words, Plaintiff pleads that "clinical studies have not conclusively established that Defendant's Products are effective," which, as explained in detail *supra*, is not cognizable. *Corbett*, 544 F. Supp. 3d at 1009.

Plaintiff also cannot plead reliance on statements about the Product's anti-inflammatory and anti-fungal properties because she has not, and cannot, truthfully plead she even viewed those representations before purchasing the Product. Plaintiff alleges she purchased the Product on Amazon (Compl. ¶ 108), but she asserts statements about the Product's anti-inflammatory and anti-fungal properties appear "on Mielle's website." Compl. ¶ 47. Because she has not alleged the challenged statements appeared on Amazon before her purchase or that she viewed the statements on Mielle's website before her purchase, Plaintiff has not sufficiently pleaded she "actually read the challenged representations," as the law requires. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014). Plaintiff also fails to plausibly allege the materiality of these statements, her reliance on them, or

their causal connection to her alleged harm because she does not allege that she has ever experienced any inflammation or fungal infection, much less that she sought a hair product to address those conditions. *Williams*, 449 F. Supp. 3d at 912–13.

Finally, Plaintiff's allegations that representations about the Product's "anti-inflammatory and anti-fungal properties" make the Product an "unapproved" or "misbranded" drug in violation of the FDCA fail as matter of law. Compl. ¶ 53. This is so because, as explained *supra* Sec. IV.B.1, Plaintiff has not pleaded facts plausibly showing the Product is used in the "the cure, mitigation, treatment, or prevention of disease" and is, therefore, a "drug." Even if Plaintiff had done so, this theory is nothing more than an attempt to privately enforce the FDCA, and it would be preempted under *Buckman* for the reasons explained above. *See supra* Sec. IV.B.1.

### 3.    Representations about "natural" ingredients are not actionable.

Plaintiff cannot sufficiently plead any claim based upon representations that the Product is "natural" or contains "natural" ingredients. Compl. ¶ 61. As an initial matter, Plaintiff's claims based on this representation fail because she has not plausibly alleged that she relied on any statement about the Product being "natural" or having "natural" ingredients when she bought it. Plaintiff pleads "Mielle's 'natural' representations are/were displayed on Mielle's website, on its Amazon store page and in the descriptions of Mielle's products on other third-party retailer websites." Compl. ¶ 61. Plaintiff's own description of the representations she purportedly viewed and relied upon on the Product's Amazon page, however, does not anywhere contain the word "natural." Compl. ¶¶ 106–108. Nor did the Product's label in January 2024 contain the word "natural." *See* RJN Ex. A. These undisputed facts alone are fatal to Plaintiff demonstrating reliance and, therefore, to any claim premised upon the Product being "natural" or having "natural" ingredients.

Moreover, the representation that the Product contains "natural" ingredients is also not actionable because it is not false or misleading. "Under the consumer protection laws of California . . . claims based on deceptive or misleading marketing

1   must demonstrate that a 'reasonable consumer' is likely to be misled by the

2   representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021).

3   　　　Here, the statement that the Product "uses natural . . . ingredients" (Compl. ¶

4   65) is not false or misleading to ordinary consumers because the Product *does* contain

5   numerous natural ingredients, including soybean oil, castor seed oil, and rosemary

6   leaf oil. RJN Ex. A. Importantly, Plaintiff has not alleged that Mielle has ever

7   represented that the Product is "all natural" or "100% natural." Compl. ¶¶ 60–77. The

8   lack of any alleged representation by Mielle that the product contains *only* natural

9   ingredients is, therefore, also fatal to Plaintiff's claims. *See Bryan v. Del Monte*

10  *Foods, Inc.*, 2024 WL 4866952 at *1 (9th Cir. Nov. 22, 2024) (affirming dismissal

11  of consumer fraud claims, where "the [product's] front label does not promise that

12  the product is wholly natural") (citation omitted).

13  　　　Moreover, any statement that the Product is "natural" is not actionable because

14  any ambiguity about the term "natural" is clarified by reference to the Product's label.

15  *McGinty v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023), is directly

16  on point. There, the Ninth Circuit affirmed dismissal of the plaintiff's consumer fraud

17  claims, which were premised upon the phrase "Nature Fusion." *Id.* at 1098. In doing

18  so, the Ninth Circuit held that, because the phrase "Nature Fusion" was ambiguous,

19  the issue of ambiguity could be "resolved by reference to the back label." *Id.* at 1099.

20  It then held that a reasonable consumer would not be misled by the statement "Nature

21  Fusion" because the ingredient list would demonstrate the product "contain[s] both

22  natural and synthetic ingredients." *Id*. So too here. As in *McGinty*, any ambiguity

23  about the statement "natural" in the Product's marketing materials is clarified by

24  "reference to the back label," which clearly discloses that the Product contains "both

25  natural and synthetic ingredients." RJN Ex. A; *see also Whiteside v. Kimberly Clark*

26  *Corp.*, 108 4th 771, 784 (9th Cir. 2024) (holding that back label ingredient list made

27  it "impossible for the plaintiff to prove that a reasonable consumer was likely to be

28  deceived" by representation a product was "plant-based").

1    For these reasons, the statement that the Product is "natural" or uses "natural"
2    ingredients cannot be the premise of any cause of action.

3        **4.    Representations about "Made in the USA" are not actionable.**

4        Plaintiff also fails to allege any claim based on the representation the product
5    was "Made in the USA." Under the Code of Federal Regulations, which Plaintiff
6    quotes in her Complaint (Compl. ¶ 89 & nn.25–26), manufacturers may use the
7    phrase "Made in the USA" on their labels if a product is assembled in United States
8    and "all or virtually all ingredients or components of the product are made and
9    sourced in the United States." 16 C.F.R. § 323.2. Here, Plaintiff fails to allege facts
10   demonstrating that not "all or virtually all ingredients or components" of the Product
11   were "made and sourced in the United States." The Product's label lists 31
12   ingredients. RJN Ex. A. In her Complaint, Plaintiff makes the conclusory allegation
13   that two of those ingredients, "tea tree oil" and "coconut oil," are "not from the
14   United States." Compl. ¶ 81. Plaintiff also references a Wikipedia article that states
15   the tea tree is "[e]ndemic to Australia" and grows "along streams and on swampy
16   flats" in "southeast Queensland and the north coast and adjacent ranges of New South
17   Wales." *Id.* ¶ 81 at n. 19. These allegations cannot support any cause of action, even
18   if taken at face value.[4] The bare assertion that—at most—two out of 31 ingredients
19   *may* have come from foreign countries is insufficient under either Rule 8 or Rule 9(b)
20   to show that not "all or virtually all ingredients or components of the product are
21   made and sourced in the United States."

22       Plaintiff's claims based upon the Product's "Made in the USA" representation
23   are also barred by California's safe harbor doctrine, which "precludes plaintiffs from

_____

25   [4] The Court should not take Plaintiff's allegation that tea tree oil is "not from the
26   United States" at face value. The "the accuracy of statements on the Wikipedia page
27   . . . are not proper subjects for judicial notice." *Bitton v. Gencor Nutrientes, Inc.*, 654
     Fed. Appx. 358, 361–62 (9th Cir. 2016). And the mere fact that a plant is native to
28   Australia does not mean it cannot also be grown in the United States.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

bringing claims based on 'actions the Legislature permits.'" *Ebner v. Fresh, Inc.*, 838 F. 3d 958, 963 (9th Cir. 2016). The California Legislature has specifically addressed when manufacturers like Mielle may label products that contain foreign-sourced materials as being "Made in the USA." In particular, California Business & Professions Code section 17533.7 provides that a product can lawfully be advertised as "Made in the USA" where:

- The "articles, units, of parts of the merchandise obtained from outside the United States constitute not more than *5 percent of the final wholesale value* of the manufactured product"; or

- The "articles, units, or parts of the merchandise obtained from outside the United States constitute not more than *10 percent of the final wholesale value* of the manufactured product" and "[t]he manufacturer of the merchandise shows that it can neither produce the article, unit, or part within the United States nor obtain the article, unit, or part of the merchandise from a domestic source."

Cal. Bus. & Prof. Code §§ 17533.7(b), (c)(1) (emphasis added). Where a plaintiff fails to allege that a defendant's product exceeds these legislative limits, dismissal of claims based upon a "Made in the USA" representation is appropriate. *See Fitzpatrick v. Tyson Foods, Inc.*, 2016 WL 5395955 at *4 (E.D. Cal. Sept. 27, 2016) (holding that "[b]ecause her complaint does not include any allegations regarding the percentage of foreign sourced materials contained in Defendant's products . . . . Plaintiff has failed to adequately allege a violation of the current version of § 17533.7"); *Hood v. Handi-Foil Corp.*, 2024 WL 4008711 at *3 (N.D. Cal. Aug. 29, 2024) (dismissing CLRA, UCL, and FAL claims where the plaintiff failed to plead facts showing violation of section 17533.7). Here, Plaintiff's allegations that two of the Product's ingredients *may* have been sourced from foreign countries is insufficient because she does not allege facts showing the "percentage of foreign sourced materials" in the Product or that the percentage of foreign-sourced materials exceeds the limits the California Legislature expressly permits. Compl. ¶ 81.

1  Accordingly, Plaintiff has failed to plead any cause of action based upon the
2  statement the Product was "Made in the USA."

3  **C.    Unjust Enrichment is not a Standalone Cause of Action.**

4          The Court should dismiss Plaintiff's unjust enrichment claim with prejudice
5  because it is legally insufficient. In California, "there is not a standalone cause of
6  action for 'unjust enrichment.'" *Astiana v. Hasin Celestial Group, Inc.*, 783 F. 3d
7  753, 762 (9th Cir. 2015) (*citing Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350,
8  1370 (2010)). Rather, "unjust enrichment" is "a general principle underlying various
9  legal doctrines and remedies" and is "not a cause of action . . . or even a remedy."
10 *Bank of New York Mellon v. Citibank N.A.*, 8 Cal. App. 5th 935, 955 (2017). For this
11 reason, the Court should dismiss Plaintiff's unjust enrichment claim. *See United*
12 *Food & Commercial Workers v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052,
13 1091 (N.D. Cal. 2014) (dismissing unjust enrichment claim with prejudice because
14 "this Court and others in the Northern District have expressly held that unjust
15 enrichment is not an independent cause of action"); *In re iPhone Application Litig.*,
16 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012) ("Plaintiffs' unjust enrichment claim
17 does not properly state an independent cause of action and must be dismissed.").

18 **D.    Plaintiff Lacks Article III Standing to Seek Injunctive Relief.**

19         Plaintiff lacks standing to seek injunctive relief because she has not alleged
20 that she will suffer the same injury in the future. To have standing to seek injunctive
21 relief, a plaintiff must face a threatened injury that is "*certainly impending* to
22 constitute injury in fact." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th
23 Cir. 2018) (citations omitted). In contrast, "conjectural or hypothetical" "allegations
24 of *possible* future injury are not sufficient." *Id.* In addition, the proposed class
25 representative must herself allege an imminent threat of future injury; if none of the
26 named plaintiffs has standing, "none may seek relief on behalf of himself or any other
27 member of the class." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac.*
28 *Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (citation omitted)). Here, the Complaint

contains no allegations that Plaintiff intends to purchase the Product again, or even that she would consider purchasing it again if Mielle removed the challenged statements. Thus, the Court should dismiss Plaintiff's claim for injunctive relief.

## V.   **CONCLUSION**

Based on the foregoing, the Court should dismiss the Complaint, and each claim therein, in its entirety.

Dated:  May 19, 2025

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By:_____/s/ Joshua E. Anderson_____
    Joshua E. Anderson
    David A. Belcher

Attorneys for Defendant
MIELLE ORGANICS, LLC

## **Local Rule 11-6.1 Certification**

The undersigned, counsel of record certifies that this brief contains 6,066 words, which complies with the word limit of L.R. 11-6.1.


Dated:  May 19, 2025                     By:_____*/s/ Joshua E. Anderson*_____
                                            Joshua E. Anderson